okay can you hear me okay we sure can all right good morning your honor may it please the court my name is Luis Cortez and i'm here on behalf of the petitioners i'll endeavor to reserve about two minutes for rebuttal and i'll watch my time your honors um i would like to address three things i think before the court uh the first being the cat evaluation by the agency then followed by the particular social group um evaluation both the cognizability and then the nexus but i think i can try to dispose of the cat argument quickly enough to try to get to the other arguments go a little slower would you please yes of course excuse me here your honor the cat analysis is structurally deficient and i think this is what we want the court to fix first our argument is is that the cat the agency's cat evaluation did not grapple or actually evaluate the evidence as required by this court and by required by the law for example they did not provide or did not mention the country condition evidence that was submitted into the record and there were hundreds of pages of it now the government what they argue is is that the they cite the cases about the court not needing to cite to specific uh pinpoint um aspects of the case and that they the court seemed to have like a general uh we looked at the evidence and so therefore uh that's sufficient for this court to conclude that that's what the agency did in the cat evaluation but this court's case in andrade i think it sets a specific uh standard that where cat requires an independent evaluation of the country condition reports and so what is it about the country condition reports that would be helpful here on the cat claim the country there's a few be helpful regarding the cat claim right um your honor things like um and i have some of the sites here for you the one of the things that we submitted into the record uh was that uh the homicide rates had increased by 45 percent um but when the out of the fences took place in this very municipality um and that the um that the actions that this which they now become a state actor that they engaged in torture and that evidence came from a diversity of um of sources from congressional reports to former military personnel to news reports uh so it came from all over about the the type of harm that stored the torture specifically prohibits or the convention and relating to the out of the fences to the out of the fences as they were conducting it in the location that they were controlling which is where um the petitioners were directly living they were living in the birthplace and so there are all these uh country condition reports that indicate that the the likelihood of torture which is what the immigration judge had the biggest problem here with the immigration judge found that out of the fences were state actors that the the actions that they would conduct would be torture the question was about what was the likelihood and so in the hundreds of pages of evidence uh he the the agency disposed of it with a about a single uh paragraph uh that doesn't itself mention any of the country condition reports the mentioning of um that there was some evidence that was mentioned was done earlier in the case and the cases at the government site too is specific to asylum um the asylum evaluation and and and i think this is particularly important because um in the ninth circuit things like country condition reports alone could be sufficient to establish cat um cat eligibility so not mentioning in the cat analysis becomes a structural defect that uh where is that this court can uh can then fix and remand so that they can actually look at the uh the country condition reports as required by andrade you would want us to re to to remand us to cat with directions to consider all the country conditions evidence i think that that's the most appropriate here you're on anything else i didn't consider uh in in terms of the cat evaluation yes uh yes i mean um if excuse me the um things like i will cite to the case in ar 395 that talks about how the um homicides wrote for 45 percent um the ar 318 uh talks specifically about um how the out the outdoor defenses who were became state sponsored it became out of them they themselves started working eventually with the organized crime groups that ended up being there uh which increases the likelihood because these two groups that petitioner has to worry about um we also have pages uh was there any evidence that the Knights Templar are state actors no there's no evidence that the Knights Templar state actors but the outer defense us who are state actors were working directly well but think you can't increase the likelihood by non-state actors uh not by nine state actors but your honor the cat evaluation is either by the by the government or somebody did the government acquiesces so if the state of if the outer defense has who is the police force there is working directly with them that's the acquiescence are they acquiescing to the Knights Templar yes yes that's what the country condition was the other offenses were fighting the Knights Templar that's the that's the very interesting thing that happened in in this in this situation in Mexico is that they rose to do that and eventually once they got control of the territory they ended up working with the very same group that they were fighting against and you have any citations to the record with yes if you look at page um uh 318 uh it's uh uh there was a member um of the uh stating that the outer defenses and Knights Templars are pretty much on the same team and this was a member of the would end up happening this group gave power and then that power corrupted um but the do you not think i mean on ar 80 81 that the ij didn't you know essentially acknowledge the country conditions report in describing the auto defenses as having a connection with the government authorities and you know having been deputized to some degree is that is that not some indication that the ij considered the evidence uh maybe your honor but what the the rule that andrade establishes is is that they first of all they need to look at the state department reports if they were filed and those were not mentioned in the cat evaluation and then draw that makes that pretty clear uh and so the the structural programming begins from there even if there was some indication that they might have been hinted to it it doesn't grapple with it in the way that the law requires and and that's specific to the cat evaluation because cat does require an independent analysis given that there's just a different structure to look at it when we're looking at likelihood um and so um so those are i think the the main structural defects your honor uh but as we argued in the brief and i won't spend too much time on this but um even if the court uh comes to the conclusion that the um there wasn't an andrade violation where they didn't look at it so uh and so that they did look at the country condition evidence then uh looking at the weight of the evidence the the immigration judge's one paragraph doesn't seem to grapple with all of these very important statistical uh and very significant uh question of the likelihood of torture which is the only question that was remaining here is there because he said there was a possibility of torture uh but he didn't he said that it falls short to the likelihood of torture and so the court doesn't have to reweigh the evidence in the country conditions what do you think in the country conditions report would suggest that your client has a particularized risk of torture yes um so citing back to uh the ar 395 where they talk about how the the um the rate of homicides increased by 45 but also your honor um and the um i don't know i'll try to get the specifics but in the record it's not particularized to this man is it excuse me it's not particularized to this man i think judge press asked you oh i'm sorry to particularize increase in risk for for the petitioner yes your honor the the increase uh for him specifically was that the out of the fence house members came to him specifically repeatedly they knew who he was and at first they were asking for things like money and and other types of resources which he obliged and he had been doing for quite some time even in the extortion portions of it he just figured that that was a part of life in mexico and it wasn't until they told him that they were uh they wanted him and his son uh to officially participate physically participate and they told them what would happen if he did if they didn't um and so when he told them i would think about it to try to get them at bay and then he left uh so they knew specifically who was and this is a town of about 10 000 people that the that this government force set up roadblocks so we're talking about a population that's very specifically geographically circumscribed and what the rest of the country conditions also report is that they were looking for men specifically who are going to um who are of a fit a particular um physical prototype in order to help them once the outer defenses started coming in people knew who they were coming after and there was a an example for example uh where when someone um the outer the outer defenses they arrested him in front of his family and then they sent him to what was described in the country condition reports as a torture chamber and this was done by someone who was there witnessing what was happening um and that they were picking up uh seemingly innocent men because of the perception that if you're not helping us then then you must be part of the same town in in the same municipality uh and we have i think it happened to turn a few miles away but it was all by the outer defenses uh that were done in that same in that same area and it was the i'm about the end of my time we'll put two minutes on the clock for rebuttal for you oh thank you your honor i appreciate the generosity may it please the court jeffrey least appearing on behalf of the attorney general substantial evidence supports the agency's denial of the petitioner's applications for asylum withholding of removal and protection under the torture convention um the court or opposing counsel has spent a lot of time on the cat analysis if the court would like me to start there i can certainly do so um in this case the agency properly considered the evidence that was before it now the immigration judge did not specifically go through all of the country conditions evidence the board did and on appeal note that it did consider the entirety of the record but what we're looking for here is individualized evidence particularized evidence such that the applicant is more likely than not to suffer torture if he returns to his home country here we don't have evidence of past torture we also don't have any evidence of a continuing interest in him when the petitioner left to go to juarez he was not targeted for any kind of harm at that point his family who remained back home in la ruana was not targeted or threatened or there were no recruitment attempts made at that time how old was the son at that time uh i don't believe i don't know his exact age i believe he was like in his teenage years or just about there but the the they had tried to get the son to be in the out of defenses previously yeah so when the out of defenses initially they were approaching him the petitioner for like uh material support and then they came and approached him to recruit him and his oldest son so you're saying after he left there were no further efforts to recruit the son at least we're aware of as far as we're aware of no your honor and nor is there any evidence that after the petitioners have left and come to the united states that there's anybody in mexico specifically seeking to torture them if they if they return as far as the the country conditions evidence itself this court recently in a case called encarnacion said that it's an error for the agency to fail to consider potentially dispositive country conditions evidence and that's not what we have here again we're looking for individualized or particularized evidence the country conditions evidence here is of general applicability um it's it discusses cartel violence increases of harm that could be applicable to anybody in terms of homicide is it not a little closer than that just given the the region it is i think that the the closest evidence we have that actually pertains to the petitioner's claim is this this documentary that was created called cartel land which deals with the out of defense us in the province that the immigration judge did address that evidence granted it was in the context of asylum but the immigration judge did note that you know that evidence been presented and then if you actually look at the the agency's analysis of the cat claim this is not a case where they're saying there's no evidence in the record to suggest that there's any likelihood of harm they acknowledge that the auto defense us are a problem and there is a possibility of harm but it falls short of the the legal requirement of it being more likely than not and if you look at the immigration judge's discussion of this i believe it's on page 79 of the record um he notes that this incident that occurred where an individual was taken away from his daughter and was subsequently harmed it almost seemed to be a random act and a random act of violence cannot really provide any likely didn't didn't the petitioner testify that his friends had been tortured or persecuted by i believe that he testified that they had been targeted in the same sort of situation as he was i believe that that they were targeted for for recruitment i don't recall them being tortured but it could be in the record and i'm just not i don't recall that specific aspect um if there are any further questions what were you referring to about the consideration of the country conditions report in the asylum yes it's on page page 79 of the records the immigration judge's decision and he discusses this documentary evidence or this documentary that had been created netflix documentary yes and so is that the country conditions evidence or you're taking that as part of it i'm taking that as probably the closest and most relevant evidence submitted to his actual claim the country conditions evidence is much more broad and again we're looking here at individualized evidence to suggest this individual is more likely than not to suffer torture so if it's evidence of cartel violence that is throughout mexico or evidence of you know things of that nature it's not going to really be enough on its own in the absence of any continued interest in the petitioner to suggest that it's more likely than not that he will himself will face torture what is the um degree to which the ij needs to engage with the country conditions evidence because you know one could say well it's not specifically discussed at least not in great detail in in the in the ij's write-up uh i don't know that there's any bright line rules for what needs to be said or how detailed it needs to be but i think it needs to be that the immigration judge there's evidence in the record that the imagery immigration judge has considered the evidence um but again the agency the immigration judge and the board don't have to write about every single piece of the evidence it's whether when you look at the entirety of the decision if it's clear that the immigration judge was actually looking at the evidence here i think that when we're looking at the way the immigration judge addressed the cat claim because it was based on the evidence in the record even if it was not specifically mentioned that it was sufficient in this case to pass that threshold because do you think his refusal to join up with the auto defenses would have you know characterized him he would have been he would have been recognized or he would have been categorized as somebody who was opposed to the auto defenses there's not evidence in the record to suggest that your honor justified to that he testified that when they approached him he said that he would think about it and then he left and then there was no subsequent interaction right he didn't join so i mean there there's been no continued interest in him so there's no evidence in the record to suggest that we testified as i mentioned earlier he testified that his friends some of his friends had been you know threatened and harmed by the auto right but he had i think that that predated his interactions so we don't have any continued interest specifically of him so we're just kind of at this point supposing that for anything in the record that indicates that they would be after him because he left the area um i don't believe so your honor um i mean again when he did leave the area he didn't there was no further contact there was no further contact of his family who remained in the area during that period of time but there was some point at some point he was confronted about where he was from there wasn't like there wasn't in conjunction with any kind of claim it was that when he was in juarez and again when he was on his way to tijuana people could recognize his accent but there was no indication that he that those individuals were seeking to harm him based on any kind of reason or let alone subject him to torture he was recognized as coming from michoacan that his accent suggests that he was from that area but that kind of brings me to the asylum and withholding context is that when we're looking at the nexus to a particular social group in this case we're looking at the entirety of the social group so even if the individual could be recognized potentially as someone from that region that doesn't really provide much evidence that um able-bodied males from la ruana who are unable to leave is viewed as a socially distinct group um the petitioner the arguments are essentially more from the perspective of the persecutor or reasonings why he might be recognized as an individual of that group but it doesn't really go towards whether or not the group itself is viewed as socially distinct is your position the proposed psg is not a proper that it is not cognizable because it's not immutable and it's not socially distinct the immutability of it it goes to the petitioners focused heavily on this inability to leave which is undermined i think most clearly on the fact that he did leave he was able to take a bus he got around the barricades went through the checkpoints went to juarez where he would live for three or four months without incident his family got on a bus left miocon got around the barricades went through the checkpoints that sounds plausible i mean was that a ground for the agency decision though uh yes so the it's at the the board found that it was not immutable because the detroit unable to leave was not immutable because your location is not something that's set in stone and then they also cited the arcg i believe which dealt with unable to leave as being an aspect the the board also noted that it was distinct from arcg which has since been overruled but because in that case the inability to leave may have been contained elements of societal or cultural prohibitions against leaving your spouse if it's an abusive relationship whereas here we have kind of these physical barricades themselves and the petitioner does the law stand on inability to leave and whether that is essentially a circular you know group based on the harm or whether you can actually define the group in that way well um diaz reyonoso came out and judge bress i mean it's probably unsurprising that i believe that the dissent in that case had the better argument there no i know but my view didn't carry the day on that but there's been things that happened since then at least at the agency level so it's come full circle um ab was the case that predated diaz reyonoso and there's been kind of a you know tennis match between the agency for the last several years but as of 9 26 this morning ab is back in good good order a matter of safs came out in september and they reinstated matter of ab1 overruled arcg again so we're kind of back where we were at least for now um in that has that been the subject of any of any further circuit precedent uh no so the the the last circuit precedent was when ab3 came out and that withdrew the previous ones because at that time there was a plan to make some kind of regulations which would have addressed the issue specifically that never happened so that's why matter of safs came through to kind of reinstate back to where it was um so whether or not there's any room here to distinguish diaz reyonoso um i think that in this case this kind of illustrates the the difficulties because the petitioner has made the inability to leave kind of the core principle of this particular social group so to kind of excise that and then at least for circularity analyze a different group it is kind of problematic and there was also the aspect of diaz reyonoso where they remanded because it wasn't clear whether the inability to leave was based on persecution or whether it was based on these could have been based on the the cultural or societal issues whereas in it seems pretty clearly tied to the persecution the petitioner says oh well you know it's difficult to to sell your business or to sell your house but those are not cultural prohibitions those are just personal difficulties you may have been doing something so i think that there it may be some room to to nuance a little bit of a distinction but with with diaz reyonoso but even if not even if you put the circularity issue to the side i believe that the immutability and the social distinction issues are sufficient to deny the applications for asylum and withholding okay we let you go a little over let me see if colleagues have other questions no okay let's hear rebuttal thank you thank you thank you thank you for the extra time um first your honor i i do want to address some uh points on on the record first uh on page 127 is the petitioner did testify that his friends were tortured uh when um they didn't abide obliged by the auto defenses um the question here is andrade here is precise about what the agency has to do it has to address evidence when it comes to the likelihood of torture and so pointing directly the court as to where it missed that ar 275 talks about the expansion of the auto defenses the government different the government force uh that at the time was in 13 out of 32 states um 317 talked about the the torture of individuals by the after the fences for people who they thought even might be against them let a bit let alone let alone that they were against them and i believe in uh page uh 150 this is important uh the petitioner testified that the community knew that he left the area and sought in the united states um and and his concern that if he returned that uh that that that is now a bigger part of the problem a bigger part of the equation so we're looking at what evidence is there on the likelihood of torture instead of reweighing the evidence the court could say did the agency really abide by andrade and doing all that in the cat context and then decide that it did not and then um uh go ahead and um remand it over in the last 30 seconds just the one thing i would say about the rebuttal and the unable to leave the ping-pong back and forth right now as it stands is that it's not prohibited arcg recognized it but um as the ping-pong back and forth it goes back to looking at it on a case-by-case basis and the unable to leave here is structural and so extraordinary um evasion his ability to leave in the middle of the night and stay in um in one place for a a minimal amount of time before god's family out there doesn't the the structure of what happened there uh certainly as the country condition reports indicate there were people coming in and out of that area who were other government officials and things like that they were able to leave they were not the ones that targeted the outdoor defense has set the roadblocks first set the conditions of being unable to leave this place and then based on that went in and targeted the the specific individuals so thank you your counsel for the briefing and argument this case is submitted
judges: PAEZ, BEA, BRESS